All rise. The United States Court of Appeals for the 5th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 5th Circuit is now open according to the law. God save the United States and this Honorable Court. Please be seated. The judge you see on the screen is our presiding judge because of potential technical problems. This meeting is being recorded. Was that you, Judge Everett? No, I guess not. Because of potential technical problems that you've already seen, I will do the presiding duties. To the extent of getting us going here, welcome. Welcome to the 5th Circuit and this postponed set of arguments from New Orleans. We have four cases on our docket today. First one is Colony Insurance v. Brandon Wright et al. We'll hear first from Mr. Merkle. Thank you, Your Honor. It pleases the court. We are here today as a result of dueling complaints filed for declaratory judgment or advice from the district judge as to whether or not coverage was provided by a commercial general liability policy of insurance for an occurrence that resulted in the wrongful death of Miriam Wright. We're here on behalf of the wrongful death beneficiaries of Mr. Wright and as the assignee of the insured, V&B International. In this case, the facts, material facts, are virtually undisputed. They're unique in that they provide an occurrence which is devoid of any questions concerning the liability of the insured. Miriam Wright, early in the morning of January 31st of 18, was driving a vehicle towards the Mississippi River on a state road in Claiborne County. A little before 7 o'clock, as he came around a curb, an iron pole gate some 20 feet or more in length that blocked the entrance to a private facility on the north side of the road had been allowed to become unlatched and swung completely across the highway. When he came around the curb, the gate, consisting of a long horizontal iron pipe with a brace, swung up over the hood of his car, smashed his windshield, and a piece of the windshield severed and decapitated him. He died there on the scene. A claim was made for the wrongful death. The defendant, V&B, reported the claim to its insurance carrier, Colony Insurance, the appellee herein, and they denied coverage. The policy sold was a commercial general liability policy. In addition to that policy, Colony also sold to V&B commercial general liability, a liver liability, commercial property liability, commercial crime liability, commercial inland marine liability, commercial farm and ranch owners and contractors, general aggregate limits, products, completed operations, and personal and advertising policies, all on the deck page that's attached to the pleadings in this case. These are important because the policy of insurance itself, as in many of these types, provides insurance first, and in providing the insurance, says that it will pay any amounts which the insured becomes liable for as a result of an occurrence. It then takes away the coverages that are not going to be applicable by a page of exclusions. There are on that page expected or intended injuries, self-defense, contractual liability, workers' comp, employees' liability, liquor liability, pollution, mobile equipment, damage to property, and provision 2G aircraft, auto, or watercraft exclusion. That one says that they will not cover or they exclude bodily injury arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, auto, or watercraft owned or operated by or rented or loaned to any insured, and this use includes operation and loading and unloading. It proceeds to say this also applies even if the claims allege negligence, wrongdoing in the supervision, hiring, employment, training, monitoring of others of the insured if the occurrence which caused the bodily injury involved the ownership, maintenance, use, or entrustment to others of an aircraft or auto that is owned or operated by the insured. Clearly makes sense and serves a specific purpose. It avoids duplication of coverages because these people obtained automobile coverage from other sources. There's no question. Did you invoke this clause in front of the district court? Excuse me? Did you invoke this provision in front of the district court? All of the provisions were for it, Your Honor. The policy was introduced and, in fact— No, I understand that the policy was in the record, but the other side's saying there's no argument about ambiguity or conflicting provisions in the district court. So where did you argue? I know the policy was in the record, but where did you argue to the district court judge that there's a conflict in these two provisions and, therefore, the one that provides— Your Honor, both parties, in their briefs before the district judge, raised the question of whether a policy was clear and ambiguous. Unambiguous was a matter for the court to determine as a matter of law. It was not a separate claim. Both parties, to be sure, argued that they were right in their interpretation. I know you argued it was unambiguous in your favor in the district court, but I understand your argument now to be there's conflicting provisions that are ambiguous and, therefore, the rule kicks in that insurance coverage has to apply when there's an ambiguity. Yes, Your Honor. So where did you argue that, that there was this conflict and thus an ambiguity that means the insured wins? Well, let me, if I may, Your Honor, to— on behalf of the rights and the states, and I'm on page 7 of that. You're talking about in the district court, the brief in the district court? Yes, yes. No, in the district court. All right. I'm reading from page 7 of that. When an insurance policy is plain and unambiguous, a court must construe the instrument like other contracts. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policyholder. Where it deems terms of the insurance policy are ambiguous or doubtful, it must interpret them most favorably to the insured. The policy is subject to two or equally reasonable interpretations. A court must adopt the one giving the greater indemnity to the policy. Right, but, I mean, that's just all the background principles. Where did you tell the district court because of this unmanned aircraft exclusion there's conflicting provisions, therefore we win? I don't find anything in the briefs that raise that, Your Honor. Now the— Well, let me ask you more generally. Regardless of what could have created the ambiguity, do you accept, as Judge Costa pointed out, it's one thing to set out what the overall principles are. Is there anywhere in the district court, whether it's that brief or some place, reply brief or something, where you argue for some reason there's an ambiguity and those ambiguities need to be interpreted in our favor? I don't find anything in the brief that was written. I don't know if there were any arguments at all. I mean, verbal arguments. Yeah, we don't have any record of that. No, there's no record of that, Your Honor. All right. But, again, as I— Well, why did I leave you? I mean, we do have the principles. We cannot raise a new issue on appeal that was not presented to the district court in order to show error. So just where do we stand on being able to consider ambiguity? Well, I think, Your Honor, the Fifth Circuit, in the case of Peegs, maybe Peegus, I'm not sure, Morehouse Parish School, 706 Federal 3rd, 735, has said, because the preclusive effect of the law— excuse me, I'm in the wrong place. Is axiomatic and an issue not raised in the trial court will not be considered on appeal unless it involves a pure question of law and our refusal to address it would result in a miscarriage of justice. The district court concluded that this was a clear question of law. Both parties argued that it was a clear question of law. Both parties relied on the contract in its entirety. In fact, the insurance company, in its brief, specifically pled all of the terms, provisions of the policy in its entirety. The policy has three different provisions within it that address the question that's before the court. Counsel, can you address— even assuming, I believe, that you don't need to preserve this argument or we should address it because of miscarriage of justice, can you address what the conflict is? Because it would seem to me that you would put both sections of this— both of these sections in to replace that other section that it says that they both replace, and so they could see one right after the other replacing that other section. But I don't see where there's an actual conflict. One provision would not take away the right to sue regarding whether the auto was owned by someone else, not an insured auto. And the other provision would take away that right. But it's not that one would give coverage and the other would take away the right. If one of them is silent as to that situation and then the other one takes away that right. So I don't see what the actual conflict is. So can you help? I'll try, Your Honor. First, the policy itself, the exclusion 2G on its own, clearly leaves coverage for this situation. It's not an insured vehicle. There would be no question about it. The so-called— But leaving coverage, not taking away coverage, and then with another provision taking away coverage, is not a conflict. That's where my problem is. Okay, Your Honor. The coverage is given by Paragraph 1 of the insuring agreement. We will pay those sums that the insured becomes legally obligated to pay as damages for bodily injury due to the occurrence, and if it's in the time and the place, it's coverage. So there is coverage there unless something takes it away, something that gives the coverage. The exclusion— The auto exclusion takes it away, right? 2G does not take it away, obviously. It leaves it—well, it takes it away if it's an owned vehicle by the insured, owned, controlled, or whatever. The so-called absolute thing read by itself without the fact that it says it replaces Paragraph 2G would not indicate to anyone that this was not going to provide coverage if a vehicle was being used by a third party who had nothing to do with the insurance. It says that it takes away damage arising directly or indirectly out of the ownership, maintenance, use, or entrustment to others. You couldn't entrust it to others if you didn't own it or control it of any aircraft, auto, or watercraft. It includes operation, loading, and unloading. It then has a second paragraph that says this inclusion applies even if the claims are that the wrongdoing is in the supervision, hiring, employment, training, monitoring of others if the occurrence which caused the injury involved the ownership of an automobile or an aircraft. Again, those things you couldn't sue someone for supervising or hiring or employment if they were not using the insured's own vehicle. So in a vacuum, even the absolute would not imply to me that it would not provide coverage in this position. But when you couple it with the unmanned aircraft provisions, and for whatever it's worth, the unmanned aircraft provisions are page 33 of this policy. The absolute liability exclusion is page 49 of it. So when the absolute exclusion says it replaces paragraph 2G, it also says all other terms and conditions of the policy remain unchanged. Along comes the unmanned aircraft, and it is a new numbered provision. It is exclusion 2GB2, little 2, aircraft other than unmanned aircraft, auto, or watercraft. So it comes and establishes a new provision for the exclusion of automobiles, and it goes right back to the same language that was there originally. Bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any aircraft other than the unmanned aircraft, auto, or watercraft, owned or operated by, rented or loaned to any insured, and it includes operation and holding. It then goes back and comes with another paragraph, and again, it says that regardless of whether you plead that there's wrongdoing of the employer's training, monitoring of others by the insurer, it still applies. So when the absolute exclusion says it replaces 2G, it is not replacing 2G2. It's not. It's replacing the old original 2G in the main exclusions, and it says all other aspects of the policy remain in full force and effect. This is another aspect of the policy that must remain in full force and effect. So it appears to me that this negates whether it was an intentional verbiage in the absolute provision or whether it was just sloppy draftsmanship, it takes away the problem with that because that specifically does not replace this unmanned aircraft provision of the policy. It's still there. So we either say that this one negated the other one, or if they both still exist, then they have diametrically opposite effects, and they're ambiguous. I guess they don't. To me, I'm not sure they have diametrically opposite effects. The aircraft one addresses when it's your own insured, and then the absolute one also addresses the own insured but also addresses it in the same way but then also extends it to the insured by other people, third party. So I guess I don't see why they can't both stick there together, as would be what I think the plain reading would be. So that's my problem. If you have anything else on that. I don't know whether Judge Southwick would give you more time to try to answer that or not. It's up to you, actual presiding judge, whatever. If you have an answer to that, I suggest you offer it, Mr. Merkel, but don't repeat what you said earlier to her question. If I understand your question, your honor, the unmanned aircraft replaced the original RO exclusion with new language, new things, a new completely different paragraph that's not even existing. The paragraph they rely on, the absolute one, replaces only the original. It does not address or replace the unmanned aircraft, which clearly would provide coverage in this situation. The automobile is not owned by an insured. It wasn't driven by it. It wasn't controlled by it. There's no reason for it to be excluded, and the unmanned aircraft thing clearly shows it is not excluded. So if they both are still viable at all, one would disavow coverage. The other one would allow coverage, and that to me is an ambiguity or a conflict between those provisions. All right, counsel. Thank you. We'll hear from you again on rebuttal. May it please the Court. Good morning, Your Honor. Good morning. My name is Rich King, and I represent Colony Insurance Company in this matter that we're here for today. I think when we look at the order of Judge Jordan, he probably said it best at some point when he said, as you were basically addressing, Judge Costa, that, and I quote, there is no dispute that the absolute auto exclusion trumps the original exclusion, and defendants have not argued that the endorsement is ambiguous. I think that alone shows that there was no argument in the lower court that had anything to do with ambiguity. As we understand it, and as we addressed in our brief, they were arguing that there was different interpretations of that actual policy, but no ambiguity. And so. Well, I think he acknowledged that. I certainly read Mr. Merkle to accept that he did not make that argument below, but he does have the alternative. Interest of justice, only a legal question. How about that? He does, Your Honor. However, we cited FDIC versus Mahalis, which says that, and most importantly, if a litigant desires to preserve an argument for appeal, that litigant, and this is the important part, must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has the opportunity to rule on it, we will not address it on appeal. That is exactly what we're talking about. Well, counsel, that still is just a repeat of you need to raise it in district court. It's not enough just to say, hey, by the way, here in a sentence is another issue you might want to think about. You have to press it. But the exception, if it is in fact one, there's at least a case or two or five that talk about it, that says if it's purely a legal issue, interest of justice, at least in some circumstances, we can reach beyond the lack of having presented it. I don't know if you have a counter that would limit such things. Why it wouldn't be applicable here? Why that's not really the law of the circuit? Do you have anything on that? Your Honor, I think I would, again, address FDIC. That almost seems like the wording is exactly what we're talking about. But even if we do – Well, that's not saying whether that was a purely legal question. It's not saying whether it's an interest of justice, whatever the other factors are. So I think we are, regardless of the voluminous law that says you have to raise it and press it and really make sure the district judge knows what's going on, there are times when we have gotten beyond that. And I'm sure you believe this is not one of those times. I don't know if you have anything more than that. I wouldn't, Your Honor. But I would address, although we believe that FDIC rules, I will address the fact that even Judge Elrod essentially argued that there's no – even if we look at ambiguity, there's no ambiguity amongst these endorsements. We've got an absolute auto-exclusion endorsement that clearly takes away the idea that you need any type of ownership by the actual plaintiff in this matter in order to actually basically trigger this endorsement, right? So that alone should be enough, even if we look at potentially some type of ambiguity argument. But more importantly, that endorsement also says directly or indirectly. So it has taken it to the extreme that it needs to in order to make sure that the person who is purchasing this actual policy, which is V&V, knows exactly what they're buying when it comes to any potential auto scenario if there is an accident. That's why that endorsement is there. So your argument is both endorsements are part of the policy. It's not like one is later and superseded the other. They're both sitting in the policy. Absolutely, Your Honor. Absolutely. And, you know, again, there is no conflict amongst those two endorsements. And, you know, again, there is no unmanned aircraft involved in this action. So I believe that it's not something that's even in dispute and or triggered because there is no unmanned aircraft. You know what? I will also note that Judge Jordan, again- Did you appear in district court? Yes. Did you appear? I did. Just a correction for Judge Jordan. He's from Mississippi, so he doesn't know how to pronounce it. But it's Judge Jordan. That's what happens when they're, you know, from New Orleans. Like, yeah. But I would say that Judge Jordan said succinctly in his opinion also that here county offers a straightforward construction because rights bodily injuries arose directly or indirectly out of the use of an auto. The absolute auto exclusion applies. And I think that's also important. I heard Mr. Markle's argument. And when he read that absolute auto exclusion endorsement, he also read that it involved any auto. And any is important, right? That alone tells you that that involves any type of auto. So when we don't have that language, if it's read- if the absolute auto exclusion endorsement is read specifically outside of the policy as it's supposed to be, you have any auto that's involved. And it doesn't have to be one that's owned or in any way related to the plaintiff in this matter. And I think that's important, right, because it doesn't require both portions of those policies in order to make that determination because it is, quote, any auto, and it's directly or indirectly involved. Beyond that, Your Honors, I think it's also important to note that, you know, we basically have cited cases such as Sausalito, which have looked at this endorsement. Although that was a Texas case, we noted that in Mississippi they basically have the same argument when it comes to anything that has to do with their concurrent causation argument that I want to make sure that I address. That is not followed in the state of Mississippi. And that that shouldn't also be anything that this court would actually address in favor of the appellants. I want to go back to something you said earlier, talking about what everyone's calling the aircraft exclusion. Sure. You're not saying that only applies to aircraft, though, are you? I mean, it does say auto in the language of the provision. That's exactly right, yeah. Okay. So then explain to me, these are both in the policy. Right. Explain to me how they interact or how they are consistent with one another. Right. And, again, there is no conflict because the unmanned aircraft would involve, again, an unmanned aircraft, right? So that's not a scenario here. What we're looking at is an absolute auto exclusion endorsement that involves an auto in the scenario inside of this policy. I think it's basically that's the simplest way of looking at it, Judge. Beyond that, Your Honors, we ask that you uphold the decision of the district court unless you have any other questions for me. All right, Counsel. Thank you. Your Honors, if I understood, Counsel, he's saying now that the unmanned aircraft, because we're not dealing with an unmanned aircraft, is irrelevant. Both of these, all three of these, deal with three different instrumentalities, an auto, a boat. We don't have a boat in any of them, and an unnamed aircraft. But they have the same provisions for all. One is as applicable as the other. There are other authorities other than the Fifth Circuit, one that I read a moment ago, addressing the question of whether the court should entertain the argument, though it was not the specific argument made below. The United States Supreme Court case of Yee v. City of Escondido, California states the same question there. It was not the argument was not raised below. They say the petitioner's arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate claims. They are rather separate arguments in support of a single claim, that the ordinance affects an unconstitutional taking. Having once raised a taking claim in the state courts, petitioners could have formulated any argument they liked to support that claim. Also, brief survey of major criteria. First, some appellate courts have stated that an issue may be addressed for the first time on appeal when it involves a pure question of law and prejudice would result from deciding it, from not deciding it. So, counsel, we can accept that such law exists. You have some of it in your brief. I don't think you need to give more sides on that. Certainly, I think you acknowledge the general rule is we do not reach beyond the arguments that have been presented. Except, if Your Honor, please, this is not an argument per se. This is a duty or an obligation of the district judge to determine whether there is an existence of an ambiguity. When he looks at his function to interpret an insurance contract, the first thing he does is read the entire policy, give everything its exact legitimate meaning, in the context it is, and he first determines, under construction rules, if it's ambiguous. If it's clear and unambiguous, he must interpret it as I've written. If he determines it's ambiguous, then he goes into the secondary things of finding out what was the purpose of it, what was the context in which it was done, what did the parties who contracted expect to result. And here, we have clearly got a matter of law. Judge Jordan so found it was a matter of law. Judge Jordan found that he was looking at the entire contract. The insurance company introduced the entire contract. They pled in their defense all of the provisions of the entire contract. There is no question that the entire contract was in the bosom of the court, and Judge Jordan had to look at it. And if there are ambiguities in it, then it must be construed in favor of the insurer and against the insurer. And both of these clauses still exist. Certainly, the absolute did not remove the unmanned aircraft. And if the unmanned aircraft continues there, it says we have coverage. And for the court not to do that on a case like this, where the insured has bought 12 different kinds of policies from these people. He's tried to protect himself and the public to the best of his ability. There's an ambiguity here that the insurance drafted. This poor timber cutter certainly couldn't sit here like we're doing and compare word by word three different clauses in this insurance and determine for himself, gosh, if Mr. Wright's driving a car and I kill him some way, I'm not covered. This would be the same if Mr. Wright had been jogging, roller skating, horseback riding, bicycle riding, and encountered this same gate and been just as dead. He would have surely had coverage. On the other hand, if they had been shooting at barmen in the yard and shot Mr. Wright as he drove by out there, the insurance company would make this same argument. There's no sense in this result. Well, isn't it because people often have auto coverage, though you don't have jogging coverage? I mean, that's why they're saying we're not going to cover auto. I'm not saying how it affects this case, but that explains why there's these exclusions. Except that as far as the negligent acts that are committed by the insured that puts the coverage into play and establishes his liability or have nothing to do with Mr. Wright being in an automobile. It did not contribute one thing to the incident. It would have been the same. And they're fortuitously saying because the insured killed him while he was in a car, we're off the hook. Well, if they both exist in the policy, would the unmanned aircraft, what we're calling the unmanned aircraft provision, would that have any force if the other exclusion was even broader and encompassed everything? Well, the unmanned aircraft, Your Honor, if you look at it, has 2G2. It is a new provision, and it is not taken away by the absolute. The absolute address is only 2G. So the absolute can't take away the unmanned aircraft, which grants coverage. That's the difference. The unmanned aircraft still is there, and it can't be taken away. The other one says all other provisions remain in effect. So the absolute defers to the unmanned coverage. It wiped out the old 2G, but it doesn't touch 2GB that we're dealing with here. All right, counsel. Unless Judge Costa has anything further, thanks to both counsel for helping us with this case.